UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AVERELL LAVAR WILLIAMS,

        Petitioner,

                                    CASE NO. 2:06-CV-10173
  v.                                  JUDGE AVERN COHN
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

HUGH WOLFENBARGER,

        Respondent.

_____/

# REPORT AND RECOMMENDATION

| | | | |
|---|---|---|---|
| I. | | RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| II. | | REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | A. | *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | B. | *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| | C. | *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| | D. | *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| | E. | *Trial Court Evidentiary Error (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| | | 1.    *Violation of Michigan Rules of Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| | | 2.    *Violation of Confrontation Clause* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| | |      a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| | |      b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| | F. | *Admission of Prison-related Incriminating Statements (Claim II)* . . . . . . . . . . . . . . . . . . . | 22 |
| | | 1.    *Fourth Amendment Expectation of Privacy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| | | 2.    *Fifth Amendment Right against Self-Incrimination* . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| | | 3.    *Sixth Amendment Right to Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| | G. | *Ineffective Assistance of Trial Counsel (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| | | 1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| | | 2.    *Failure to Vigorously Cross-Examine Witness (Claim IV(A))* . . . . . . . . . . . . . . . . . | 26 |
| | | 3.    *Failure to Remove Juror (Claim IV(B))* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| | | 4.    *Failure to Investigate (Claim IV(C))* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29 |
| | | 5.    *Failure to Object to Prosecutorial Misconduct (Claim IV(D))* . . . . . . . . . . . . . . . . | 31 |
| | | 6.    *Failure to Sever Joint Trials (Claim IV(E))* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 35 |
| | | 7.    *Appellate Counsel (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 36 |
| | H. | *Right to Speedy Trial (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37 |
| | | 1.    *Violation of State 180-Day Rule* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37 |
| | | 2.    *Sixth Amendment Speedy Trial Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 38 |
| | |      a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 38 |
| | |      b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 39 |
| | | 3.    *Due Process Pre-Indictment Delay* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 40 |
| | I. | *Cumulative Error (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 43 |
| | J. | *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 43 |
| III. | | NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 43 |

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.   <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Averell Lavar Williams is a state prisoner, currently confined at the Macomb Correctional Facility in New Haven, Michigan.

2.    On July 31, 2000, petitioner was convicted of one count of first-degree felony murder, MICH. COMP. LAWS § 750.316, and one count of possession of a firearm during the commission of a felony, MCL § 750.227b, following a jury trial in the Ingham County Circuit Court. On September 20, 2000, he was sentenced to life without parole for first-degree felony murder and two years' imprisonment for felony firearm.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    Where Willy Peters was an accomplice in the crime and was a major witness against defendant Williams, the trial judge violated the rules of evidence and due process and committed reversible error in overruling the defense objections to admitting hearsay evidence of prior consistent statements by Peters that bolstered the prosecution case and that were made when Peters already had a motive to fabricate.

II.   The trial judge committed reversible error under both the State and Federal constitutions in overruling the defense objections to admission of the tape and transcript of the questioning of Averell Williams by a fellow inmate because Williams was in custody and he was not given his Miranda warnings, his statements were involuntary, and the questioning violated his expectation of privacy and his rights to remain silent.

The Michigan Court of Appeals affirmed his convictions in an unpublished, per curiam opinion. *See People v. Williams*, No. 230883 (Mich. Ct. App., Oct. 11, 2002). The Michigan

Supreme Court denied leave to appeal the same issues as it was not persuaded that the questions presented were entitled to review. *See People v. Williams*, 468 Mich. 878, 659 N.W.2d 238 (2003).

4.    In a motion for relief from judgment filed on March 26, 2004, petitioner raised the following issues in trial court:

I.    Defendant was denied his right to due process and effective assistance of appellate counsel where appellate counsel failed to raise meritorious issues of ineffective assistance of trial counsel related to five claims of error in which the defendant can demonstrate cause and prejudice.

II.    Defendant was denied his right to effective assistance of counsel at trial guaranteed him by the State and Federal constitution by counsel's failure to (A) vigorously cross, (B) remove juror, (C) investigate, (D) object to repeated prosecutorial misconduct, and (E) failure to sever trials.

III.    The cumulative effect of the errors committed during defendant's trial require relief because he did not receive a fair trial under the State and Federal constitution.

On April 5, 2004, petitioner's motion for relief from judgment was denied by the trial court for failure to establish entitlement to relief as required by Michigan Court Rule (MCR) 6.508(D). *See People v. Williams*, No. 00-75787-FC (Ingham County Cir. Ct., Apr. 2, 2004).

Petitioner appealed the trial court's denial of his motion and raised the same three claims in the Michigan Court of Appeals, as well as a fourth claim asserting an abuse of the trial court's discretion for violating his right to a speedy trial. The Michigan Court of Appeals denied petitioner's application for leave to appeal for "failure to meet the burden of establishing relief under MCR 6.508(D)." *See People v. Williams*, No. 260409 (Mich. Ct. App., Aug. 16, 2005). The Michigan Supreme Court likewise denied petitioner's application for leave to appeal for failure to meet the requirements of MCR 6.508(D). *See People v. Williams*, 474 Mich. 980, 707 N.W.2d 207 (2005).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on January 4, 2006. As grounds for the writ of habeas corpus, he raises the following six claims:

I. Where Willy Peters was an accomplice in the crime and was a major witness against defendant Williams, the trial judge violated the rules of evidence and due process and committed reversible error in overruling the defense objections to admitting hearsay evidence of prior consistent statements by Peters that bolstered the prosecution case and that were made when Peters already had a motive to fabricate, thereby denying the petitioner a fair trial and due process of law pursuant to US Const. amend. V, VI, XIV, and Article 4 Sec. 2 at (1) (entitlement to privileges and immunities guaranteed) MRE 801(d)(1)(B) (hearsay).

II. The trial judge committed reversible error under both the state and federal constitutions in overruling the defense objections to admission of the tape and transcript of the questioning of Averell Williams by a fellow inmate because Williams was in custody and he was not given his *Miranda* warnings, his statements were involuntary, and the questioning violated his expectation of privacy and his rights to remain silent to counsel, and to due process of law pursuant to US Const. Amend.V, VI, XIV (Entitlement) Art 4 Sec. 2(1).

III. Petitioner was denied his right to due process of effective assistance of appellate counsel where appellate counsel failed to raise meritorious issues of ineffective assistance of trial counsel related to five claims of error in which the defendant can demonstrate cause and prejudice, thereby denying the petitioner due process of law pursuant to US Const. Amend.V, VI, XIV (Entitlement) Art 4 Sec. 2(1).

IV. Petitioner was denied his right to effective assistance of counsel at trial guaranteed to him by the state and federal constitution by counsel's failure to (A) vigorously cross examine, (B) remove juror, (C) investigate, (D) object to repeated prosecutorial misconduct, and (E) failure to sever joint trial, thereby denying him the right to due process of law pursuant to US Const. Amend.V, VI, XIV (Entitlement) Art 4 Sec. 2(1).

V. The trial court abused its discretion by not dismissing charges against petitioner due to a failure to timely prosecute; required in the state and federal constitutions, due to a speedy trial violation, thereby denying him the right to due process of law pursuant to US Const. Amend.V, VI, XIV (Entitlement) Art 4 Sec. 2(1), and Mich. Const. 1963, Art 1 Sec. 17 and 20.

VI. The cumulative effect of the errors committed during defendant's trial

require relief because he did not receive a fair trial under the state and federal constitutions, thereby denying him the right to due process of law pursuant to US Const. Amend.V, VI, XIV (Entitlement) Art 4 Sec. 2(1), and Mich. Const. 1963, Art 1 Sec. 17 and 20.

6.      Respondent filed his answer on July 26, 2006.  He contends that petitioner's claims are barred by petitioner's procedural default in the state courts, and are without merit.

7.      Petitioner filed a reply to respondent's answer on August 28, 2006.

B.      *Factual Background Underlying Petitioner's Conviction*

The facts underlying petitioner's conviction were accurately summarized in petitioner's brief on direct appeal in the Michigan Court of Appeals:

SUMMARY

Defendant Averell Williams was charged with open murder, MCL 750.316; MSA 28.548, and possession of a firearm in the commission of a felony (felony firearm), MCL 750.227b; MSA 28.424(2).  Appendix, Information.  Mr. Williams, Alexis Smith, and Willy Peters allegedly broke into a house in Lansing, intending to rob Vincent Burns, a man who sold drugs.  While the robbers were upstairs Mr. Burns fled out a basement window and one of the robbers, allegedly Defendant Williams, shot and killed Denise McCall, Burns' mother.

Averall William's defense was that he was not guilty because he was not present and had no involvement in the crime.  Willy Peters lied in his testimony against Williams.  Mr. Peters also downplayed his involvement in planning the robbery and in the killing itself.  T 7/28/00, pp 129-132, 137.

Averell Williams and Alexis Smith were tried jointly before the Honorable Carolyn Stell in Ingham County Circuit Court.  After a five-day jury trial, both Williams and Smith were found guilty of first-degree felony murder and felony firearm.

TRIAL

Arthur Austin testified that he and Denise McCall were at their house in Lansing on the evening of January 20, 1998.  After getting off work earlier in the day, Mr. Austin and Ms. McCall picked up their son, Vincent Burns, at the hospital, where he had been treated for injuries suffered in a fight that day, and also picked up McCall's six-year-old granddaughter at McCall's daughter's house.  T 7/25/00, pp 22-26.  Arthur Austin was eating dinner, Denise McCall was taking a shower, and Vincent Burns was in his bedroom in the basement when there was a knock at the front door.  Id., at 28-29.  After a young woman asked Arthur Austin for Vincent Burns and Austin called to him, two or three masked people barged in.  Id., at 30-35.

Mr. Austin saw at least one gun.  Id., at 35.

The intruders forced Arthur Austin to the floor in the television room and told him to call Vincent Burns up from the basement.  T 7/25/00, pp 36-38.  At some point Denise McCall came into the room.  The intruders cursed her and told her to shut up, and then Austin heard shots, the intruders ran out of the house, and Austin got up and saw McCall face down on the kitchen floor.  Id., at 41-43, 46.

The pathologist testified that Denise McCall was struck by five gunshot wounds, one of which was fatal because it went through her heart.  T 7/25/00, pp 154, 165-169. Two bullets were recovered during the autopsy, one of which was the fatal bullet.  T 7/25/00, pp 157-158, 167; T 7/27/00, pp 34-35.

Officer Quincy Lamont Scroggins testified that at about 9:30 in the evening on January 20 he was dispatched to the call that shots had been fired.  Before he reached the house he saw crossing the street a black man wearing bandages and a hospital uniform.  The man was Vincent Burns, and he told Officer Scroggins that he crawled out the basement window of his house.  As he was leaving he heard shots fired.  T 7/25/00, pp 85-89.

When the police searched Vincent Burn's basement bedroom, they found that the window had been broken and pulled out.  T 7/25/00, pp 96, 117.  Between the mattress and springs of Burn's bed were a knife, a nine-millimeter pistol, and a bank bag containing $1,100 in cash.  Id., at 118, 130.  The testimony of the police witnesses also showed that a total of seven shots were fired from a .40 caliber Glock pistol.  Id., at 145; T 7/27/00, pp 12, 38-44.  There were no fingerprints on any of the seven casings recovered at the house.  Id., at 14.  Of the total of six bullets or bullet fragments recovered, four were fired from one firearm and the remaining two could have been fired from the same one.  Id., at 41-43.  During the police investigation no firearm was recovered.  T 7/28/00, pp 21, 66.

Willy Peters testified that he was serving prison sentences for manslaughter and second-degree murder.  The manslaughter conviction was for killing Vincent Burns - Mr. Peters admitted that he had shot Burns to death during a gunfight at a gas station in June of 1998, five months after the death of Denise McCall.  T 7/27/00, pp 52-53, 86.  Mr. Peters also admitted that the murder conviction was for the death of McCall, to which he pled guilty in exchange for a sentence of 22 to 50 years and his agreement to testify against the others in the case.  Id., at 87-88.

Willy Peters said that he, Averell Williams, and "Capone," i.e., Alexis Smith, had talked about robbing Vincent Burns.  T 7/27/00, pp 55-56.  Mr. Peters suggested that they use his friend Victoria Beasley to knock on the door so that they could get into the house.  Id., at 62-63, 89.  Willy Peters, Averell Williams, Alexis Smith, and Albert Evans, Peter's cousin, picked up Victoria Beasley and drove to Vincent Burns's house.  Willy Peters stated that he had a .380 caliber pistol, Averell Williams had a .40 caliber Glock, and Alexis Smith had a nine millimeter pistol.  Id., at 67-68.  While Peters, Smith, and Williams hid in the bushes, Beasley knocked on the door and asked for Burns.  Id., at 68-70.  An older black man answered the door and went to get Burns, and then Willy Peters, Alexis Smith, and Averell Williams went in the front door.  Id., at 72-74.  The three intruders heard glass breaking in the basement.

Id., at 77. Willy Peters saw a naked woman peek around the corner, and he motioned for her to come out. Id., at 78-79. Mr. Peters said they should leave, but Averell Williams "said somebody got to go." Id., at 80. As Peters and Smith ran out of the house, Peters heard several gunshots. Id., at 81. When the men dropped off Victoria Beasley, she demanded that they give her their pistols, which she hid in a bag. She gave the guns back to them a few days later. Id., at 83-84. Mr. Peters denied that he killed Denise McCall. Id., at 144. However, he admitted that he shot Vincent Burns with a ten millimeter Glock, similar to the pistol with which Averell Williams allegedly shot Denise McCall.[1] Id., at 113, 120.

Victoria Beasley testified that Willy Peters called her to go for a ride. T 7/27/00, pp 151-152. There were four men in the car: Willy Peters, a cousin of Peters, Averell Williams, and "Capone," i.e., Alexis Smith. The cousin was driving, Alexis Smith was in the front passenger seat, and Beasley, Willy Peters, and Averell Williams were in the back seat. Id., at 157. Ms. Beasley did not see any guns. Id., at 159. Willy Peters was doing most of the talking, but there was no talk about a robbery. Id., at 181-182.

Ms. Beasley stated that they stopped at a house where Peters asked Beasley to go to the front door and ask for "his boy Vince." T 7/27/00, p 160. She knocked on the door, and after asking for Vince and telling the man who answered that her name was Angie she returned to the car. Id., at 161-164. All four men got out of the car and ran to the front door of the house; she did not see anything in their hands or on their faces. Id., at 164-165, 173. She could not see where they went, but she thought that all four men went into the house. Id., at 166, 184, 186. Several minutes later all four came running back again and got in the car; she still did not see anything in their hands or on their faces. Id., at 167-168. When they got back to Beasley's house she got out, but nobody gave her any guns. Id., at 169, 179.

Defense counsel objected to introduction into evidence of a conversation between Averell Williams and Javel McElwrath that was recorded when Williams and McElwrath were inmates together in December of 1998. T 7/28/00, pp 3-11, 52-56. Counsel objected both to playing the tape of the conversation and to giving the jury a transcript of the conversation. He objected that the conversation was irrelevant and more prejudicial than probative, that it referred to other criminal activities for which Williams was not on trial, and would confuse the jury. Id., at 3-6. "[T]he only direct statements about my client having done anything wrong are made by the other guy, not my client." Id., at 5. The prosecutor stated that she had edited the tape to remove various references to prison and selling drugs. Id., at 6-7. She said that the conversation was very probative because, "the jury should hear . . . the Defendant's lengthy discussions about why Willy Peters won't tell on him." Id., at 8. Also, when Mr. McElwrath asked Williams, "Why did you smoke that lady?", Williams responded that he would not say because "you'll write a statement."

---

[1]The firearms expert testified that the .40 caliber Smith and Wesson caliber, the caliber of the bullets that were allegedly fired at Denise McCall, and the 10 millimeter Glock use the same diameter of bullet. T 7/27/00, pp 44, 49.

Id., at 10. The trial judge found that the evidence of the conversation was more probative than prejudicial and overruled the objection. Id., at 10-11.

Detective Verne Read testified that he went to see Willy Peters in September of 1999 in a prison where Peters was serving his sentence for killing Vincent Burns. T 7/28/00, pp 26, 63. Mr. Peters had not been charged yet for the killing of Denise McCall, and Detective Read had no authority to make a plea agreement with him and did not promise him anything. Id., at 26-28. However, Detective Read and the detective with him told Peters that if he cooperated they would help him and "relay his wishes to the Prosecutor's Office." Id., at 27.

When the prosecutor asked Detective Read what Willy Peters said happened on January 20, defense counsel objected on hearsay grounds. T 7/28/00, pp 28-29. The prosecutor argued that Peter's statements were admissible under MRE 801(d)(1) as prior consistent statements to rebut any express or implied "charge of recent fabrication or improper influence or motive" because the defense had attacked Peters' credibility "because he got a plea agreement." Id., at 29. Defense counsel further objected that the prior consistent statements were improper bolstering of Peters' trial testimony. Id., at 30. The trial judge overruled the objections, stating that the statements were not hearsay and citing MRE 801(d)(1)(B). Id.

Detective Read went on to testify about Willy Peters's story. The detective repeated the entire alleged sequence of events, from Peters meeting with the others involved in the abortive robbery of Vincent Burns, to hiding while Victoria Beasley knocked on the door, to going in the house and putting Arthur Austin on the floor and having him call for Vincent Burns. Detective Read repeated Peters's story that he motioned Denise McCall to come in the room, that they heard the basement window break, that Averell Williams said "somebody's got to go," that Peters and Alexis Smith ran from the house, and that Peters heard gunshots. Id., at 30-38.

Detective Read also testified about the conversation between Averell Williams and Javel McElwrath[2] Mr. McElwrath had agreed to help Read's investigation by wearing a tape recorder/transmitter and talking to Mr. Williams. T 7/28/00, pp 46-48. When the prosecutor moved to introduce Exhibits 49 and 50, the transcript and tape of the edited conversation, defense counsel objected again. Id., at 52-56. Counsel objected that the evidence was obtained by stealth and violated Defendant Williams's rights not to incriminate himself and not to talk to the police without being advised of his constitutional rights. He objected that it was improper "to send Mr. McElwrath in to talk to my client and to prompt him to talk about certain things," including using the newspaper to point him in the direction to talk. Id., at 53. He argued that McElwrath only talked to Williams at the instigation of the police and "was an agent of the Police Department." Id., at 54.

The prosecutor responded that the rules concerning interrogation only applied to the police, not to the use of an agent. She also argued that a consenting party can

---

[2]Pursuant to a stipulation at the beginning of the previous day of trial, Javel McElwrath had been dismissed as a witness. T 7/27/00, p 3.

make a recording of his conversation without violating the "expectation of privacy" of the nonconsenting party. T 7/28/00, p 55. The trial judge overruled the defense objections and admitted the exhibits of the tape and transcript. Id., at 56-57. She said that she had heard no caselaw in support of the defense objections and "I've never had an objection raised to a tape made from a wire by somebody who was wired at the request of the police." Id., at 56.

Detective Verne Read testified that for the conversation with Averell Williams he had provided Javel McElwrath that day's Lansing State Journal, which had an article about the instant case. T 7/28/00, pp 57, 81. The tape of McElwrath's and Williams's conversation was then played for the jury and they were given copies of the transcript in order to follow along. Id., at 57-58.

Codefendant Alexis Smith did not testify and did not present any witnesses. See T 7/28/00, pp 84-86.

Defendant Averell Williams testified that he had no involvement in the planned robbery or in the murder and that he did not go to Denise McCall's house. T 7/28/00, pp 88, 91. He admitted, though, that he and Alexis Smith were friends. Id., at 91. Mr. Williams and Willy Peters had been friendly until Peters came home one day to find his wife having sex with Williams, which Williams thought was one motive for Peters to testify against him. Id., at 90, 95. What knowledge Mr. Williams had about the case, in particular when he talked to Javel McElwrath, came from his conversations with several people, including Willy Peters. He had led Mr. McElwrath to believe that he was involved in the murder because he was boasting and playing a game with McElwrath. Id., at 88-91. During cross-examination of Defendant Williams, the prosecutor referred to "Mr. McElwrath being a little too questioning" and "asking a few too many specific questions" during their conversation. Id., at 96.

The trial judge instructed the jury on first-degree murder, both premeditated and felony (home invasion), on second-degree murder, and on felony firearm. T 7/31/00, pp 14-20.

The jury found both Averell Williams and Alexis Smith guilty of felony murder and felony firearm. T 7/31/00, pp 27-28. . . . On September 20, 2000, they were sentenced to the mandatory, consecutive terms of life in prison without parole and two years.

Br. of Def.-Appellant, in *People v. Williams*, No. 230883 (Mich. Ct. App., Oct. 11, 2002), at 1-8.

C.    *Procedural Default*

Respondent first contends that petitioner's third through sixth claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. The Court should disagree.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends, *inter alia*, that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th

Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Trial Court Evidentiary Error (Claim I)*

Petitioner claims he was denied a fair trial when the trial court overruled defense objections to the admission of certain testimony. Petitioner argues that this error violated state evidentiary law as well as denied him a fair trial in violation of his Confrontation Clause guarantees. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Violation of Michigan Rules of Evidence*

Petitioner claims the trial court committed error in violation of state evidentiary law when it overruled defense objections to the admission of prior consistent statements of a testifying witness, Willy Peters. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws").

Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning admissibility of evidence does not rise to a level of constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir,. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also, Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

Here, regardless of whether the admission of Peters's testimony was proper under state law, petitioner has offered nothing to show that Peters's testimony was irrelevant to the issues in the case or so unreliable that the jury would not be able to take due account of its shortcomings. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.      *Violation of Confrontation Clause*

Petitioner also argues that admission of the hearsay statements denied him a fair trial in violation of his Confrontation Clause guarantees. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court's "Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam). The petitioner's claim implicates the first category.

Cases falling into this first category generally, as in the present case, involve the tension between the Confrontation Clause on the one hand, and the rules for admission of hearsay evidence on the other. At the time of petitioner's trial and appeal of right, the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). In *Roberts*, the Court explained that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings. Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66.

As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception. The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990). Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection." *Roberts*, 448 U.S. at 66 (internal quotation omitted).

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id*. at 60-68. The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id*. at 68-69.

In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68. The Court did, however, provide some

guidance. Specifically, the Court provided three possible "formulations of th[e] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted). While the Court declined to adopt any of these three formulations, the Court noted that the term "testimonial," whatever else it may cover, "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

As explained above, *Crawford* establishes a confrontation rule with respect to "testimonial" statements; it has no application to non-testimonial hearsay. The question therefore remains whether *Roberts* has any applicability to this case to the extent that the statements admitted at petitioner's trial were not testimonial hearsay under *Crawford*. Petitioner contends that *Roberts* retains its force with respect to non-testimonial hearsay, and that the Michigan Court of Appeals's decision was an unreasonable application of *Roberts* with respect to any non-testimonial statements which were admitted at his trial. Because it is now clear that the Confrontation Clause is not at all concerned with non-testimonial hearsay, the Court should conclude that *Roberts* has no application here.

In *Crawford*, the Court suggested, but did not definitively rule, that the Confrontation Clause is limited to regulating the introduction of testimonial hearsay, and has no application at all to the admission at trial of non-testimonial hearsay. The Court explained that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility

in their development of hearsay law–as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68. Immediately following *Crawford*, several courts had concluded that *Roberts* remained applicable to non-testimonial hearsay, observing:

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements. . . . [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005); *see also*, *Horton v. Allen*, 370 F.3d 75, 83-84 (1st Cir. 2004); *United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005); *United States v. Savoca*, 335 F. Supp. 2d 385, 391-92 (S.D.N.Y. 2004). Regardless of whether this reading of the *Crawford* dictum was correct, the Supreme Court has since clarified that the Confrontation Clause is simply not implicated by the introduction of non-testimonial hearsay. In *Davis v. Washington*, 126 S. Ct. 2266 (2006), the Court explicitly addressed this question of "whether the Confrontation Clause applies only to testimonial hearsay," *id*. at 2274, and in doing so abrogated *Roberts* in whole. The Court noted that the answer to this question was suggested in *Crawford*, when the *Crawford* decision explained that the Confrontation Clause focuses on "witnesses" who give "testimony." *Id*. (discussing *Crawford*, 541 U.S. at 51). The *Davis* Court explained that "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id*. Thus, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated at all, and need not be considered. *See Whorton v. Bockting*, 127 S. Ct. 1173, 1183 (2007) ("Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under *Crawford*, on the other hand, the Confrontation

Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability."); *United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006); *Gabarrette v. Sullivan*, No. C 04-5454, 2007 WL 578991, at *9 (N.D. Cal. Feb. 21, 2007); *State v. Paiz*, 149 P.3d 579, 587 (N.M. Ct. App. 2006); *Hodges v. Commonwealth*, 634 S.E.2d 680, 689 (Va. 2006).

This conclusion is not altered by the fact that *Roberts* was clearly established federal law at the time the Michigan Court of Appeals decided petitioner's case. The jurisdiction of a federal court to issue a writ of habeas corpus is provided by § 2254(a), which grants jurisdiction to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) merely delineates a subset of these cases in which habeas relief is not available. Thus, a finding under § 2254(d)(1) that the state court unreasonably applied *Roberts* would not automatically entitle petitioner to habeas relief if the admission of the evidence were nonetheless constitutional. As the Fourth Circuit has explained,

> [n]either *Williams* nor § 2254(d)(1) requires issuance of a writ before determining the critical question of whether a prisoner is being held in violation of the Constitution or laws of the United States. Thus, the proper interpretation of the role of § 2254(d)(1) in habeas corpus review is that it establishes a threshold by which we determine whether we are authorized to issue a writ, but it does not compel the issuance of a writ once the standard set forth therein has been satisfied. *See* [*Williams*, 529 U.S.] at 412 (deeming § 2254(d)(1) a "new constraint" on federal courts' power to issue writs and stating that a federal court "may" issue the writ upon determining that the standards found in § 2254(d)(1) are satisfied); *see also Weeks v. Angelone*, 528 U.S. 225, 237 (2000) (referring to the issue under § 2254(d)(1) as whether habeas relief is "preclude[d]" or "prohibit[ed]," rather than whether such relief is mandated). Rather, § 2254(d)(1) must be read in conjunction with the purpose of the writ, as outlined in § 2254(a), which is to protect a prisoner from being held in violation of federal law.

*Rose v. Lee*, 252 F.3d 676, 691 (4th Cir. 2001) (parallel citations omitted). In other words, even where a state court decision is unreasonable under § 2254(d)(1), "a prisoner must establish an

entitlement to the relief he seeks" under § 2254(a) by demonstrating that he is being held in violation of the Constitution or laws of the United States. *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003); *see also*, *Palmer v. Clark*, 408 F.3d 423, 436 (8th Cir. 2005) ("Even if the [state] court erred in its analysis, [petitioner] is not entitled to relief on this ground unless his constitutional or statutory rights were violated.").

Here, even if the Michigan Court of Appeals erred with respect to its analysis of any statements not constituting testimonial hearsay under *Roberts*, petitioner would not be able to show a constitutional violation as required by § 2254(a), because the introduction of non-testimonial hearsay does not violate the Confrontation Clause.[3] Thus, in light of the language of § 2254(a) and the Supreme Court's decisions in *Crawford* and *Davis*, this Court should conclude that *Roberts* is irrelevant in this habeas proceeding. The only question before the Court with respect to petitioner's confrontation claims is whether the court of appeals's conclusion that the evidence was admissible was contrary to, or results from an unreasonable application of, the Court's decision in *Crawford*.[4]

---

[3]Although this result flows from a plain reading of § 2254, the conclusion is buttressed by the absurdity of a contrary result. For instance, suppose that the Court were to conclude that the Michigan Court of Appeals unreasonably applied *Roberts* with respect to a particular non-testimonial statement, and that this finding alone entitled petitioner to habeas relief. The actual relief to which petitioner would be entitled would be a new trial. However, at that new trial, the prosecution would be free to again introduce the non-testimonial statement, because under *Crawford* and *Davis* it is clear that the non-testimonial statement is not barred by the Confrontation Clause.

[4]That the Michigan Court of Appeals did not itself consider *Crawford* (as that case had not been decided at the time of the court of appeals's decision), does not alter this formulation of the appropriate habeas standard. The question before both the court of appeals and this Court is the same: whether the admission of the hearsay evidence violated petitioner's right to confront the witnesses. A court on habeas review does not assess whether a state court's reasoning is contrary to or an unreasonable application of clearly established federal law, only whether the ultimate conclusion is so. *See Merced v. McGrath*, 426 F.3d 1076, 1081 (9th Cir. 2005) ("[I]t is the state court's decision, as opposed to its reasoning, that is judged under the 'unreasonable application' standard."); *Onifer*, 255 F.3d at 316 (citing *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000)) ("[T]his court has held that even if a state court fails to articulate its reasoning for a decision on the merits, the deferential standards of AEDPA still apply.");

*b. Analysis*

Detective Verne Read testified that he visited Willy Peters in prison on September 28, 1999.

Peters was in prison for the murder of Vincent Burns and had not yet been charged for the killing

of Denise McCall. See Trial Tr., Vol. IV, at 26, 63. Detective Read told Peters that if he cooperated

in the investigation of the McCall murder, he and the other investigating officer would relay his

cooperation to the prosecutor. See Trial Tr., Vol. IV, at 27-28. Advised of his Miranda rights, Peters

described the sequence of events on the date of McCall's murder and implicated petitioner. See Trial

Tr., Vol. IV, at 30-38. Willy Peters subsequently pled guilty to second-degree murder in Denise

McCall's homicide and, as part of a plea agreement, agreed to testify against all co-defendants. At

trial, and after the in-court testimony of Willy Peters, the prosecution called upon Detective Read

to relay the statement made by Peters while in prison. The defense made a hearsay objection, which

was overruled by the court. See Trial Tr., Vol. IV, at 29-30. Petitioner argues the trial court

committed error requiring reversal when it overruled defense objections to the admission of Peters's

prior consistent statements. The Michigan Court of Appeals, in rejecting petitioner's hearsay claim,

stated the following:

> The prosecution acknowledges that the court improperly admitted the
> statements because the witness's statements to the police were made after the
> witness's motive to lie arose. Therefore, the only issue in need of resolution is
> whether the error was harmless . . . .
> . . . .
> Assuming the trial court abused its discretion in admitting evidence of the
> witness's prior consistent statements to the police, we find the error harmless.
> Although the witness was one of the prosecution's main witnesses and his credibility
> was at issue, there was sufficient evidence to corroborate the witness's trial
> testimony and to substantiate defendant's role. The witness's testimony put
> defendant at the scene of the crime, with a weapon, and established defendant's

*Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) (in applying § 2254(d)(1), "we are determining the
reasonableness of the state courts' 'decision,' not grading their papers.").

> intent to commit a robbery. Eyewitness testimony corroborated much of the witness's testimony, including the victim's fiancée's testimony. Further, from defendant's taped conversation with a fellow inmate, the jury could surmise defendant's involvement. Thus, in light of the strength and weight of the untainted evidence in this case, the error was harmless.

*People v. Williams*, No. 230883, 2002 WL 31296651, *1-2 (Mich. Ct. App. Oct. 11, 2002).

Regardless of the reasonableness of this determination, and indeed regardless of whether Peters's statement admitted at trial constituted testimonial hearsay, petitioner is not entitled to habeas relief on this claim because Peters actually testified at trial and was subject to cross-examination by petitioner's counsel. As the Supreme Court has explained, "none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial." *California v. Green*, 399 U.S. 149, 161 (1970). On the contrary, "where the declarant is not absent, but is present to testify and submit to cross-examination, our cases, if anything, support the conclusion that the admission of [the witness's] out-of-court statements does not create a confrontation problem." *Id*. at 162.; *see also*, *United States v. Owens*, 484 U.S. 554, 560 (1988). This rule survives *Crawford*. *See Crawford*, 541 U.S. at 59 n.9. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Admission of Prison-related Incriminating Statements (Claim II)*

Petitioner's second claim asserts trial court error in overruling defense objections to the admission of clandestinely taped conversations between petitioner and fellow inmate, Javel McElwrath. Petitioner argues that the statements were deliberately elicited by a government agent while he was in custody and without advisement of his *Miranda* rights. Therefore, their admission violated his constitutional expectations of privacy and his rights to remain silent, to counsel, and to

due process as guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments. The Court should disagree.

1.     *Fourth Amendment Expectation of Privacy*

Petitioner first claims that the recording of his conversation violated his expectation of privacy under the Fourth Amendment and Due Process Clause. The Court should reject this claim.

"[T]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable." *Minn. v. Carter*, 525 U.S. 83, 89 (1998). However, the Supreme Court has also held "that the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). In *Palmer*, the Court stated that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.*, at 526. In December 1998, petitioner was incarcerated on unrelated charges when the recorded conversation with Javel McElwrath, a fellow inmate, occurred. In accordance with the *Hudson* decision, an inmate has no expectation of privacy within a prison cell, and the surreptitious recording of petitioner's conversation with his cell mate did not violate the Fourth Amendment. *See Lanza v. New York*, 370 U.S. 139, 143-44 (1962). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this issue.

2.     *Fifth Amendment Right against Self-Incrimination*

Likewise, the Court should conclude that petitioner's argument that his statements to his cell mate were taken in violation of his Fifth Amendment privilege against self-incrimination is without merit. As the Supreme Court has explained, "[c]onversations between suspects and undercover

agents do not implicate the concerns underlying *Miranda*. The essential ingredients of a 'police dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. . . . When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking." *Illinois v. Perkins*, 496 U.S. 292, 296-97 (1990) (citations omitted). The Michigan Court of Appeals's decision rejecting petitioner's claim on the basis of *Perkins*, *see Williams*, 2002 WL 31296651, *2, was neither contrary to nor an unreasonable application of this clearly established federal law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Sixth Amendment Right to Counsel*

*Perkins* also forecloses petitioner's argument that the statement made to his cell mate was taken in violation of his Sixth Amendment right to counsel. In *Perkins*, police placed an undercover agent in a jail cellblock with the defendant, who was incarcerated on charges unrelated to the murder being investigated. Responding to the agent's questions, Perkins made statements implicating himself. Charged with murder, Perkins moved to suppress the statements on the ground, *inter alia*, that the statement was taken in violation of his Sixth Amendment right to counsel. Rejecting Perkins's Sixth Amendment claim, the Court stated: "This Court's Sixth Amendment decisions in *Massiah v. United States*, *United States v. Henry*, and *Maine v. Moulton* also do not avail respondent. We held in those cases that the government may not use an undercover agent to circumvent the Sixth Amendment right to counsel once a suspect has been charged with the crime. After the charges have been filed, the Sixth Amendment prevents the government from interfering with the accused's right to counsel. In the instant case no charges had been filed on the subject of the interrogation, and our Sixth Amendment precedents are not applicable." *Perkins*, 496 U.S. at

299 (citations omitted). The Court has repeatedly emphasized that the Sixth Amendment right to counsel is a trial right which does not apply to events before the initiation of formal adversary criminal proceedings, *see United States v. Ash*, 413 U.S. 300, 303 n.3 (1973), and thus the Sixth Amendment right to counsel attaches only at or after the initiation of criminal proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See Fellers v. United States*, 540 U.S. 519, 523 (2004); *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

Here, at the time of the recorded conversation between petitioner and Javel McElwrath , a warrant had not been issued, and charges would not be filed until February 2000. Rejecting petitioner's claim, the Michigan Court of Appeals reasoned:

> To the extent defendant raises the issue of a violation of his Sixth Amendment right to counsel, this argument must also fail. The Sixth Amendment right to counsel attaches only at or after the initiation of adversarial proceedings. See *People v. Winters*, 225 Mich.App 718, 723;571 NW2d 764 (1997). Defendant acknowledges that the conversation took place in December 1998. A warrant was not issued and charges were not filed for the instant case until February 2000. Defendant's right to counsel had not yet attached; therefore, his claim fails.

*Williams*, 2002 WL 31296651, *2. This determination was consistent with *Perkins* and the Supreme Court's cases more generally discussing attachment of the Sixth Amendment right to counsel, *see United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993), and thus was a reasonable application of clearly established federal law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.   *Ineffective Assistance of Trial Counsel (Claim IV)*

Petitioner next raises several claims that his trial counsel was constitutionally ineffective. Specifically petitioner contends that counsel was ineffective for failing to: (1) vigorously cross-examine a witness; (2) remove a juror; (3) investigate; (4) object to repeated prosecutorial

misconduct; and (5) move to sever his trial from that of his codefendant. The Court should conclude that petitioner is not entitled to habeas relief on any of these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two are mixed questions of law and fact. *Id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also, O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether

there is a reasonable probability that, absent errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    *Failure to Vigorously Cross-Examine Witness (Claim IV(A))*

Petitioner claims trial counsel was ineffective for failing to vigorously cross-examine and impeach the credibility of prosecution witness Willy Peters. Specifically, defense counsel failed to make use of Mr. Peters's prior inconsistent statements found in his February 3, 1999, out of court letter to Ingham County Circuit Court Judge Carolyn Stell. Petitioner claims that counsel's inaction was unreasonable and deprived him of his right to effective assistance of counsel.

On February 3, 1999, one year prior to the filing of charges in this case Peters mailed a written statement to Ingham County Circuit Court Judge Carolyn Stell. *See* Pet'r's Br., Ex. G. The letter stated that he had had nothing to do with the murder of Ms. McCall and that he had learned the details only when petitioner and Alexis Smith had later informed him of them. The letter also described multiple incriminating incidents, unrelated to the McCall murder, allegedly committed by the petitioner. In his own subsequent trial, Willy Peters pleaded guilty to second-degree murder in Ms. McCall's homicide and, as part of a plea agreement, agreed to testify against all co-defendants. During the discovery phase of petitioner's case, the out-of-court statement was forwarded to defense counsel. At trial, the defense made no use of the letter as a prior inconsistent statement in order to impeach the in-court testimony of Willy Peters. Petitioner asserts that this failure to vigorously cross-examine the prosecution's witness denied him of his right to effective assistance of counsel.    The recent Sixth Circuit case, *United States v. Bass*, 460 F. 3d 830 (6th Cir. 2006), is analogous. Following a jury trial in the United States District Court, Defendant Bass was convicted of conspiracy to distribute cocaine and a firearms murder during or in relation to a

drug trafficking crime. On appeal, Bass claimed, *inter alia*, ineffective assistance of counsel for failing to impeach the testimony of several prosecution witnesses with their prior inconsistent statements regarding their involvement in an unrelated murder. *See Bass*, 460 F.3d at 838. The Court of Appeals found the claim lacking in merit "because it was a reasonable trial strategy for counsel not to dwell on the . . . murder when there was an indication that Bass had been involved in the dismemberment and hiding of [the] body." *Id*. at 839.

In the present case, it was reasonable for defense counsel to weigh the potential use of Peters's letter for impeachment purposes against the possibility that the prosecution would make use of other incriminating information also included within it. In essence, the defense's use of the letter would "open the door" for the prosecution to avail itself of its other contents. Therefore, in light of the double-edged quality of the letter, it was reasonable trial strategy to make no use of it. "To prevail on a motion for new trial based upon ineffective assistance, the defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defense in a manner that deprived the defendant of a fair trial." *Bass*, 460 F.3d at 838 (quoting *Strickland*, 466 U.S. at 687). Since it was reasonable trial strategy for counsel not to utilize Peters' statement, his performance was not deficient, therefore, in accordance with *Strickland*, the second prong of prejudice need not be addressed. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

3.      *Failure to Remove Juror (Claim IV(B))*

Petitioner next claims that trial counsel was ineffective for failing to remove allegedly biased juror Troy Wendell. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

During voir dire of the jury, the court asked the panel if any juror knew the Ingham County Prosecutor or any members of his staff. *See* Trial Tr., Vol. I, at 18. Juror Troy Wendell informed the court that he "worked with the [Ingham County] prosecutor and his office." *Id.* The court then asked, "Do you think that that experience would make it difficult for you to sit as a fair juror?" To which Mr. Wendell made an inaudible response which nevertheless satisfied the court. *Id.* The record does not indicate in what capacity Mr. Wendell worked with the prosecutor's office. Later, when asked by the court whether any juror had testified as a witness in any court proceeding, Mr. Wendell answered that he had served as an expert witness in civil and malpractice cases, the last occasion being eight years prior. *Id.*, at 46-47. Through the course of the voir dire, counsel for petitioner made ten peremptory challenges until concluding with, "my client indicates to me that we are satisfied." *Id.*, at 81, 91, 100, 116, 125, 132, 134, 140, 142, 144, 150. At no time did Mr. Wendell state that he felt any bias or partiality toward the defendants or prosecution and he properly swore to render a true verdict. *Id.*, at 151.

As the Sixth Circuit has observed, "counsel is accorded particular deference when conducting voir dire," emphasizing that "[a]n attorneys' actions during voir dire are considered to be matters of trial strategy." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir.2001). The unadorned statement that Wendell had worked with the prosecutor's office does not alone establish that Wendell was biased, particularly in light of his assurance that he could judge the case fairly based on the evidence. Petitioner has pointed to nothing either in the state court record or outside of the record which indicates that Wendell was biased. Petitioner has therefore failed to meet his burden of showing that counsel's failure to excuse Wendell was deficient, or that he was prejudiced by counsel's performance. *See Tafoya v. Tansy*, 9 Fed. Appx. 862, 871 (10th Cir. 2001). *See*

*generally*, *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995) (to establish counsel ineffective assistance, petitioner must show that jury was actually biased). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      4.      *Failure to Investigate (Claim IV(C))*

      Defense counsel objected on two occasions to the introduction into evidence of the taped, in-prison conversation between petitioner and fellow inmate, Mr. Javel McElwrath. The first objection was that the statements were more prejudicial than probative. *See* Trial Tr., Vol. IV, at 3-11. The second was that the clandestine recording of the conversation was in violation of the defendant's constitutional rights. *Id.*, at 52-57. The court overruled both. *Id.*, at 11, 57. Petitioner asserts that trial counsel was ineffective for failing to investigate the accuracy of the recording and to object to the statements based on their inaudibility. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      In two direct appeal cases, the Sixth Circuit has set forth standards governing the admissibility of taped prison cell conversations. In *United States v. Robinson*, 707 F.2d 872 (6th Cir. 1983), the court summarized the requisite standards with regard to the admission of taped, in-prison conversation :

> It is well settled that the admission of tape recordings at trial rests within the sound discretion of the trial court. That discretion presumes, as a prerequisite to admission, that the tapes be authentic, accurate and trustworthy. Moreover, they must be audible and sufficiently comprehensible for the jury to consider the contents. Recordings will be deemed inadmissible if the "unintelligible portions are so substantial as to render the recording as a whole untrustworthy."

*Robinson*, 707 F.2d at 876 (citations omitted). The fact that the tape has some unintelligible portions does not automatically render the entire recording inadmissible. *See United States v. Robinson*, 763 F.2d 778, 781 (6th Cir.1985). The Sixth Circuit has further explained:

In *Robinson*, we noted that the ideal procedure for assuring the transcript's accuracy is to have both sides stipulate to a transcript's accuracy. 707 F.2d at 878. In the absence of a stipulation, we advised, "the transcriber should verify that he or she has listened to the tape and accurately transcribed its content. The [district] court should also make an independent determination of accuracy by reading the transcript against the tape." *Id.* at 879.

This Court has noted that the goal of a procedure as in *Robinson*, "is to provide the jury with transcripts which bear a 'semblance of reliability.'" *United States v. Burke*, No. 97-5889, 1999 WL 617972 at *3 (6th Cir. Aug. 12, 1999) (unpublished opinion) (quoting *Robinson*, 707 F.2d at 879). In *Burke*, the district court judge did not make an independent determination of the transcript's accuracy by reading it while listening to the tape. *Id.* Nonetheless, this Court held that the transcripts contained a 'semblance of reliability' because the transcriber was familiar with the materials he transcribed since he had listened to the conversation between the conspirators while it was initially being recorded. *Id.* at *4. Moreover, the *Burke* court concluded that any error by the district judge was harmless as the defendant was unable to point to even one error in the transcript. *Id.*

*United States v. Jacob*, 377 F.3d 573, 581-82 (6th Cir. 2004).

Here, although there is nothing in the record to indicate the trial court independently reviewed the tape and transcript in order to insure their accuracy, Detective Verne Read's testimony was sufficient to provide the required "semblance of reliability" as laid out by the *Jacob* court. As Mr. McElwrath was outfitted with both a recording and a transmitting device, Detective Read testified that he had both witnessed the actual event and verified the recording and resulting transcript. *See* Trial Tr., Vol. IV, at 48-49. Detective Read was meticulous in their comparison, and inaudible sections were so noted. *Id.*, at 49-50. Lastly, the prosecution redacted the tape and transcript so as to limit the prejudicial impact of many of its topics. *Id.*, at 6-10. Therefore, the requisite semblance of reliability was satisfied, and the tape and transcript would not be barred based on an objection for inaudibility. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

5.    *Failure to Object to Prosecutorial Misconduct (Claim IV(D))*

Petitioner claims trial counsel was ineffective for failing to object to repeated prosecutorial misconduct. Petitioner asserts that on several occasions the prosecutor improperly vouched for two witnesses for the prosecution, Willy Peters and Victoria Beasley. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

To show that counsel was ineffective, petitioner must show that the underlying prosecutorial misconduct claims were meritorious. For a prosecutor's misconduct to have denied a defendant a fair trial, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "The touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982)). "Therefore, even if the prosecutor's conduct was undesirable or even universally condemned, it does not constitute a due process violation unless the conduct was so egregious so as to render the entire trial fundamentally unfair." *Bryd*, 209 F.3d at 529 (citations and quotations omitted). With regard to allegations of improper vouching, the Sixth Circuit has stated that:

> Generally, improper vouching involves either blunt comments, see, e.g., *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, see, e.g., *Carroll* 26 F.3d at 1388 (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

Petitioner first contends that the prosecutor improperly vouched for the government witness, Willy Peters. In support of this claim, petitioner points to five specific comments, made during the prosecution's opening and closing remarks:

(1) "Willy Peters confessed to felony murder. . . . He confessed to being inside the house and taking part in this plan, and he did that with no deals, no plea agreements, no promises, no sentence caps. He confessed to felony murder. Now does that make Willy Peters a hero? Of course not, but what it makes him is truthful." Trial Tr., Vol. IV, at 104.

(2) "Now if he said when the detectives went and talked to him: 'Hey, I was just an innocent observer and I really wasn't involved in any of it, but I can tell you two people that were completely involved and did it all were Averell Williams and Alexis Smith.' Well, then that would give you reason to raise an eyebrow of suspicion at what he's saying. But when he sits there and tells these two detectives: 'I'm guilty of this, but so are these other two people.' What would motivate him to lie at that point?" *Id.*, at 104-105.

(3) "Now ultimately, [Willy Peters] did get a deal and what a deal it is. . . .Is that such a great break that he would lie to get it?" *Id.*, at 105.

(4) "And though I've relied heavily on Willy Peters, it's not even all about him. There's other evidence in the case. It happens to support what he says. Just as the tape supports what he says." *Id.*, at 143.

(5) "I won't ask you to like Willy Peters. I won't ask you to think that he's an all right guy. But I will ask you to see his coming forward makes him different than the other two involved. And I hope that you will understand the reason for calling him as a witness. If you accept the conclusion that Willy Peters will offer to you and if you will look at the other evidence that will support what he tells you, then you will be able to conclude that Averell Williams murdered Denise McCall. . ." Trial Tr., Vol. II, at 14-15.

Petitioner also argues that the prosecutor improperly vouched for the government witness, Victoria Beasley. Petitioner points to the following comment made in closing argument:

"The fact that she doesn't tell the truth about some things doesn't mean you have to throw out all her testimony. You can choose to believe parts of her testimony and not believe others. You can believe the parts - like the fact the two defendants and Willy Peters acting together got out of that car and ran up to the house. And the two defendants and Willy Peters acting together ran back to the car one after the other."

Trial Tr., Vol. IV, at 109.

None of these statements rise to the level of improper vouching as defined by the Sixth Circuit in *Francis*. Here, the prosecutor has neither personally vouched for the witnesses' veracity nor suggested that non-trial evidence supported their testimony.[5] Rather, the prosecutor merely encouraged the jurors to look at the evidence presented while considering the motivations behind the testimony. *See United States v. Parker*, 49 Fed. Appx. 558, 563 (6th Cir. 2002) (no plain error where prosecutor merely referred to the evidence and offered an explanation for the witnesses' possible motivation to lie or to tell the truth in a situation in which credibility was key to the jury's determination of guilt or innocence). Thus, any objection to these comments would have been without merit, and counsel cannot be deemed ineffective for failing to raise a meritless objection.

Petitioner also asserts that the prosecution's closing remarks impermissibly shifted the burden onto the defendant. The prosecutor stated in rebuttal:

> "And Willy Peters may have had a 10-millimeter Glock, but it was the defendant, Averell Williams, by his own admission, that had the gun most consistent with what Scott Marier found, a 40-caliber Glock. And he took the stand, Averell Williams did. He doesn't have to, but he did. And he told us that he had that 40-millimeter - - or that 40-caliber Glock. Did we see his 40-caliber glock? Did we hear him offering for a comparison to be made? We heard Scott Marier say if we have a gun - - if we actually have a weapon, we can fire it and we can do comparisons and say, yeah, this is the weapon.' We didn't hear that."

Trial Tr., Vol. IV, at 142. Petitioner cannot show that this comment denied him a fair trial. As the prosecutor's comment indicates, petitioner's own admission established that petitioner had the .40 caliber handgun, and that gun was most consistent with the ballistics evidence. The prosecutor's comment regarding further testing could not have altered the jury's consideration of the evidence. Thus, petitioner cannot show that he was prejudiced by counsel's failure to object to this statement.

---

[5]The details of Willy Peters' plea agreement were elicited under direct examination. *See* Trial Tr., Vol. III, at 87-88.

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief based on counsel's failure to object to the prosecutor's comments.

6.    *Failure to Sever Joint Trials (Claim IV(E))*

Petitioner next contends that he was denied effective assistance of counsel due to counsel's failure to sever his trial from that of his codefendant. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

On July 11, 2000, the prosecution filed a motion for joinder of trial for Defendant Williams and Co-Defendant Alexis Smith. Although counsel for Defendant Williams "[took] no position to this request," counsel for codefendant Smith argued for severance based, *inter alia*, on "mutually antagonistic defenses." Hearing Tr., 7/11/00, at 12. The court, however, granted the motion and permitted joinder. Petitioner argues that he was denied effective assistance of trial counsel because counsel did not adequately respond to or argue against the prosecution's motion. Petitioner looks to the fact that Smith alleged that he was present at the scene, but had no knowledge that a murder would result, whereas petitioner's defense was that he was not present, did not participate, and had no knowledge of the incident until after the events. Brief for the petitioner at 49.

In seeking to demonstrate prejudice, petitioner looks to the introduction of two statements made prior to trial, where Smith implicated petitioner and Mr. Peters as the leaders of the operation. Brief for the Petitioner at 48-49. However, these statements, taken in the presence of both defense counsels, the prosecutor, and police, were introduced through the testimony of Detective Read, thereby insuring that any prejudicial reference to petitioner was controlled.[6] *See* Trial Tr., Vol. IV,

---

[6]Alexis Smith did not testify at trial and his voluntary statements by were not introduced as exhibits.

at 38-46.  Petitioner also looks to the tenor of questioning by counsel for Smith during the cross-examination of Detective Read in which counsel seemed to implicate petitioner.  Brief for the Petitioner at 50.  However, each of these instances gave rise to an objection by the prosecution and resulted either in the court sustaining the objection or the question being withdrawn.[7]  *See* Trial Tr., Vol. IV, at 61, 62.  Further, the trial court properly instructed the jury to consider the evidence against each defendant separately:  "Defendant Alexis Smith's statement has been admitted as evidence only against him.  It cannot be used against Defendant Averell Williams and you must not do so.  You must not consider the statement in any way when you decide whether Defendant Averell Williams is guilty or not guilty."  Trial Tr., Vol. V, at 8.  Additionally, the court advised that:

> Alexis Smith and Averell Williams are both on trial in this case.  The fact that they are on trial together is not evidence that they were associated with each other or that either one is guilty.  You should consider each Defendant separately.  Each is entitled to have his case decided on the evidence and the law that applies to him.  If any evidence was limited to one Defendant, you should not consider it as to the other Defendant.

Trial Tr., Vol. V, at 13; *see also id.*, at 19.  Thus, the court's instructions were sufficient to cure any alleged prejudice.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

7.      *Appellate Counsel (Claim III)*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on direct appeal.  To demonstrate that appellate counsel was ineffective, petitioner must show, inter alia, that his claims would have succeeded on appeal.

---

[7]      Counsel also elicited from the detective the fact that Smith's firearm was loaned to him by petitioner, but in the next question was unable to extract a context behind that loan and moved on. *See* Trial Tr., Vol. IV, at 65-66.

*See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained *supra,* all these claims are without merit. Thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Right to Speedy Trial (Claim V)*

Petitioner contends that the delay between the crime in this case and his trial violated his statutory rights under the Michigan 180-day provision of MICH. COMP. LAWS § 780.131(1), as well as denied him his Sixth Amendment right to a speedy trial and his due process right to be free from excessive pre-indictment delay. The Court should conclude that petitioner is not entitled to relief on any of these bases.

1.      *Violation of State 180-Day Rule*

Petitioner first contends that the trial court erred in denying his June 12, 2000 motion to dismiss the charges pursuant to the state speedy trial act, which required that he be brought to trial within 180 days of the notice from the Michigan Department of Corrections to the prosecuting attorney regarding inmate placement and request for final disposition. However, this state law speedy trial rule provides no basis for federal habeas corpus relief. As the Supreme Court has explained, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "[T]he validity of a judgment as a matter of state law is for the state to determine. Federal courts only adjudicate questions of federal law." *Frazier v. Moore*, 252 Fed. Appx. 1, 3 (6th Cir. 2007) (citing *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir. 1976)). Thus, as the Third Circuit explained in rejecting a claim similar to petitioner's made under Pennsylvania law:

Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

In this case, Pennsylvania's 180-day rule does not define the contours of the federal constitutional right to a speedy trial.

*Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991) (citations omitted).  Other courts have reached the same conclusion with respect to similar speedy trial laws.  *See Robinson v. Leapley*, 26 F.3d 826, 831 (8th Cir. 1994); *Davis v. Wainwright*, 547 F.2d 261, 264 (5th Cir. 1977); *cf. Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

2.      *Sixth Amendment Speedy Trial Claim*

Petitioner also contends that he was denied his Sixth Amendment right to a speedy trial by the delay between the filing of the criminal complaint and the commencement of his trial.  The Court should conclude that he is not entitled to habeas relief on this basis.

*a. Clearly Established Law*

The Sixth Amendment guarantees, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI.  "Whereas due process considerations generally govern pre-indictment delay, post-indictment delay implicates the Sixth Amendment speedy trial guarantee." *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006)  (*citing United States v. Marion*, 404 U.S. 307, 324 (1971), and *United States v. Greene*, 737 F.2d 572, 575 (6th Cir.1984)).

The Supreme Court has set forth a balancing approach for determining whether a delay between arrest or indictment and trial results in a Sixth Amendment speedy-trial violation.  *See*

*Barker v. Wingo*, 407 U.S. 514, 523-30 (1972). The following four factors are to be considered: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant. *See id.* None of these factors alone is enough to establish a violation and the court is to conduct a balancing analysis that considers each of these factors along with such other circumstances that may be relevant. *See Watford*, 468 F.3d at 900 (citing *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003)). However, the length of delay factor is a threshold issue. That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors. *See Schreane*, 331 F.3d at 553 (citing *Barker*, 407 U.S. at 530). A delay is presumptively prejudicial if it is "uncommonly long" or "extraordinary." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)). The Sixth Circuit has found that a delay is presumptively prejudicial when it approaches one year. *Id.*

### b. Analysis

In this case, the record does not indicate the precise date that charges were brought against petitioner for the January 20, 1998, murder of Denise McCall. Therefore, petitioner looks to December 2, 1998 as the start of the speedy trial clock. Prior to and following this date, petitioner was incarcerated with the Michigan Department of Corrections while serving a sentence for an unrelated felony. Brief for the petitioner at 54. December 2, 1998, is significant to petitioner for two reasons. On or about that date, police officials acquired taped conversations between himself and fellow inmate, Javel McElwrath (addressed *supra*), and, more importantly, petitioner's custody

level was increased from a Level II to a Level IV.[8]  This alteration in custody level occurred as a result of the Michigan Department of Corrections receiving a felony suspect information from Lansing law enforcement officials.  A lien-hold was subsequently placed on petitioner pursuant to Michigan Department of Corrections Policy Directive 03.01.120.  Petitioner contends that this information equates to a placement of charges and, therefore, indicates the start of the speedy trial clock.  However, MDOC PD 03.01.120, in pertinent part, defines a Felony Suspect Information as: "Information received either verbally or in writing from a law enforcement agency that a prisoner is suspected of committing a felony *but no charges have been filed* because the case is still under investigation." Mich. Dep't Corr. Pol'y Directive 03.01.120(B) (emphasis added). A felony suspect information, therefore, is insufficient to start the speedy trial clock . The Supreme Court has stated that "only 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections' of [the Speedy Trial Clause of the Sixth Amendment]." *United States v. Lovasco*, 431 U.S. 783, 788-899 (1977) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)).

At the July 23, 2000, pre-trial hearing of petitioner's motion to dismiss for failure to prosecute, the prosecutor stated, "This was a lengthy investigation, and the charges were not authorized until February 2000." Hearing Tr., dated 7/13/00, at 11. Beyond this, the record indicates that petitioner was arraigned on February 2, 2000, and trial commenced on July 24, 2000.  As the Sixth Circuit delineated in *Watford*, the Sixth Amendment speedy trial guarantee is only implicated

---

[8]**MDOC Policy Directive** 03.01.130, Prisoner Security Classification, reads, in pertinent part: "While there is no right to placement at a particular security level, prisoners shall be classified according to management and confinement requirements necessary for protection of the general public, prevention of escape, maintenance of control and order, and the safety of staff and prisoners." **MDOC Policy Directive** 03.01.130(A) (Dec. 31, 2007).

by post-indictment delay. As petitioner's charging and trial dates are well within the Sixth Circuit's one year threshold requirement under *Schreane,* the span is not presumptively prejudicial. Therefore, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

3.       *Due Process Pre-Indictment Delay*

The Fifth Amendment provides, in relevant part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. V.  The Supreme Court has indicated that although statutes of limitations provide the "'primary guarantee against bringing stale criminal charges,'" where preindictment delay is involved "the Due Process Clause has a limited role to play in protecting against oppressive delay."  *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (*quoting United States v. Marion*, 404 U.S. 307, 322 (1971)).  The Sixth Circuit

> has consistently read *Lovasco* to hold that "[d]ismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device by the government to gain a tactical advantage."

*United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (*quoting United States v. Brown*, 667 F.2d 566, 568 (6th Cir.1982) (per curiam)) (emphasis and alterations in original).   "Allegations of prejudice must be specific, concrete, and supported by evidence; vague, speculative or conclusory allegations will not suffice."  *United States v. Dacri*, 827 F. Supp. 550, 553 (E.D.Wis.1993) (citing *United States v. Fuesting*, 845 F.2d 664, 669 (7th Cir.1988)). Regarding delay, the Sixth Circuit in *Brown* went on to advise that "although preindictment delay intentionally brought about by the prosecution to obtain a tactical advantage over the defendant may warrant the dismissal of an indictment, a defendant's Fifth Amendment due process rights are generally not implicated where the government offers a valid reason for the delay."  *Brown*, 959 F.2d at 66 (citations omitted).  If a lengthy investigation is proffered as such a reason, the Supreme Court in *Lovasco* counseled:

In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S., at 324, 92 S.Ct., at 465, precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt.

*Lovasco*, 431 U.S. at 795 (holding, with regard to a 17 month delay, that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time").

The facts of this case are insufficient to satisfy the two prongs of the *Lovasco* test. Petitioner contends that preindictment delay resulted in substantial prejudice because, due to the pendency of charges, petitioner was transferred to a high security prison and, furthermore, was denied eligibility for parole. Brief for the Petitioner at 59; see also Reply Brief for the Petitioner at 17. As stated *supra*, there is no right to placement at a particular security level and prisoners shall be classified according to management and confinement requirements. In terms of parole, petitioner's Security Classification Screen Review dated December 2, 1998 lists his earliest release date as October 2000 as well as indicates "3 or more instances of escape/absconding/walkaway/AWOL in the last 10 years." In light of this, petitioner's allegation of prejudice seems highly speculative and unable to satisfy a specific, concrete, and supported by evidence standard. *See also United States v. LaBorde*, 496 F.2d 965 (6th Cir. 1974) (where appellee argued he was denied parole because of the pending federal charge, but was serving concurrently for another felony, the court found that any such prejudice was highly speculative and deserving of little weight in the speedy trial balancing process).

Further, there is no evidence that the delay was an intentional device by the government to gain a tactical advantage. Petitioner's allegation of tactical advantage is largely conclusory, and

only asserts that the "police and the prosecutor used [the delay] to obtain a faulty confession and plea agreement from key prosecution witness Willy Peters." Brief for the Petitioner at 60. Willy Peters's statement was voluntary, and he testified at trial, thereby allowing petitioner to confront his accuser. Therefore, petitioner's allegations are insufficient to satisfy the two prongs of the *Lovasco* test, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Cumulative Error (Claim VI)*

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the errors at his trial. The Court should conclude that petitioner is not entitled to habeas relief on this basis. It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994). As noted and discussed in this Report, none of the petitioner's claims establish constitutional error, and thus his cumulative error claim fails.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an

unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives_____
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: October 24, 2008

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record  by electronic means or U.S. Mail on October 24, 2008.

s/Eddrey Butts
Case Manager